[Cite as *In re M.S.M.*, 2023-Ohio-3771.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: M.S.M. | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| | : | |
| | : | |
| | : | Case No. 2023 CA 00070 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Appeal from the Court of Common Pleas, Case No. 2022 JVC 00455

JUDGMENT:       Affirmed

DATE OF JUDGMENT:       October 16, 2023

APPEARANCES:

For Plaintiff - Appellant

KATHALEEN S. O'BRIEN
116 Cleveland Avenue NW, Suite 303
Canton, OH 44702

D. COLEMAN BOND
116 Cleveland Avenue, Suite 600
Canton, OH 44702

RALPH LACKI, GAL – Mother
4608 Castlebar Avenue NW
Canton, OH 44708

For Defendant-Appellee

BRANDON J. WALTENBAUGH
402 2nd Street SE
Canton, OH 44702

LYNETTE BLASIMAN, CASA GAL
110 Central Plaza, Suite 436
Canton, OH 44702

*King, J.*

{¶ 1}   Mother-Appellant S.M. appeals the June 22, 2023 judgment entry of the Stark County Court of Common Pleas, Juvenile Division, which granted permanent custody of her minor child, M.S.M. to Appellee Stark County Job and Family Services (SCJFS). We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   This case involves one child, M.S.M. born April 15, 2022. On April 25, 2022, SCJFS filed a complaint alleging dependency/neglect. Concerns included Mother's extensive history with children's services agencies in Colorado and Montana resulting in Mother's permanent loss of custody of at least six other children, Mother's ongoing severe mental health issues, her multiple aliases, Mother possibly shaking M.S.M., and Mother leaving M.S.M with the alleged father who is a registered sex offender. The same day, an emergency shelter care hearing was held resulting in M.S.M. being placed in the temporary custody of SCJFS.

{¶ 3}   On July 7, 2022, M.S.M. was found to be dependent and placed in the temporary custody of SCJFS. A case plan was developed with a goal of reunification. Mother's case plan required her to obtain a parenting assessment at Summit Psychological, mental health counseling, drug screens, supervised visits with M.S.M. including attending her medical appointments, complete Goodwill Parenting, and obtain independent housing and income.

{¶ 4}   Thereafter, the trial court conducted the appropriate six-month review hearings.

{¶ 5}   On March 8, 2023, Mother filed a motion to change legal custody of M.S.M. to herself or her boyfriend who was not M.S.M.'s father.

{¶ 6}   On March 9, 2023, SCJFS filed a motion for permanent custody of M.S.M. The motion alleged in part that M.S.M. could not be placed with Mother within a reasonable time, that Mother had lost custody of other children, and that permanent custody was in M.S.M.'s best interests.

{¶ 7}   On March 15, 2023, counsel for Mother filed a motion to withdraw citing Mother's March 8, 2023 motion which she personally filed in the family court by telling court employees her attorney had directed her to file the motion. However, counsel for Mother had previously declined to file the motion on behalf of Mother as there was no legal basis to support the motion. The trial court granted counsel's motion to withdraw and appointed new counsel.

{¶ 8}   On April 6, 2023 SCJFS filed an amended complaint to add developments involving Mother abducting a newborn in Coshocton County. Mother was arrested March 17, 2023, charged with several felonies, and incarcerated pending trial.

{¶ 9}   On June 7, 2023, Mother filed a motion to extend SCJFS's temporary custody for an additional six months.

{¶ 10} On June 13, 2023, the trial court heard evidence on SCJFS's motion for permanent custody and Mother's motion to extend temporary custody. By judgment entries filed June 22, 2023, the trial court denied Mother's motion for an extension of temporary custody, found M.S.M cannot or should not be placed with either parent in a reasonable amount of time, that permanent custody to SCJFS was in M.S.M.'s best

interest, terminated all parental rights, and granted permanent custody of M.S.M to SCJFS. Findings of fact and conclusions of law were filed contemporaneously.

{¶ 11} Mother filed an appeal and the matter is now before this court for consideration. She raises two assignments of error as follow:

I

{¶ 12} "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY OF MINOR CHILD AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

II

{¶ 13} "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTERESTS OF THE MINOR CHILD TO GRANT PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I, II

{¶ 14} Because they are interrelated, we address Mother's assignments of error together. Mother argues: (1) the trial court should have granted her motion for an extension of time to complete her case plan; (2) that the trial court erred in granting permanent custody to SCJFS because SCJFS failed to demonstrate by clear and convincing evidence that grounds existed to grant permanent custody or that permanent

custody was in M.S.M.'s best interest; and (3) the trial court's decisions are against the manifest weight of the evidence. We disagree.

Applicable Law

{¶ 15} R.C. 2151.414(B)(1) states in relevant part that permanent custody may be granted to a public or private agency if the trial court determines by clear and convincing evidence at a hearing held pursuant to division (A) of R.C. 2151.414, that it is in the best interest of the child and any of the following apply:

> (a) The child is not abandoned or orphaned* * *and the child cannot
> be placed with either of the child's parents within a reasonable time
> or should not be placed with the child's parents.
>
> * * *

{¶ 16}  R.C. 2151.414(B) therefore provides a two-pronged analysis the trial court is required to apply when ruling on a motion for permanent custody. In practice, the trial court will determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1) (a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶ 17} R.C. 2151.414(D) governs "best interests" and states:

> (D) In determining the best interest of a child at a hearing held
> pursuant to division (A) of this section or for the purposes of division
> (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415

of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period ending on or after March 18, 1999;

(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 18} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the

syllabus. See also, *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶ 19} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman*, 132 Ohio St .3d 328, 2012-Ohio-2179, 972 N.E.2d 517.

Mother's Arguments

{¶ 20} Mother argues she complied with all aspects of her case plan and took substantial steps in the right direction. The evidence elicited at the hearing, however, reflects the contrary. The trial court heard from SCJFS ongoing case worker Jennifer Grice, Mother's mental health counselor, her parenting class advisor, Canton police detective Kevin Sedares, and the guardian ad litem. Mother presented no evidence.

{¶ 21} SCJFS case worker Jennifer Grice was assigned to M.S.M.'s case. She testified the initial concerns were Mother's significant mental health history, concerns she may have been experiencing a postpartum psychosis, and reports that Mother was shaking M.S.M. Grice stated she developed a case plan for Mother which consisted of a

parenting evaluation, parenting classes, comprehensive mental health treatment, random drug screens, and a directive to find and maintain independent housing. Transcript of trial (T.) 21-23.

{¶ 22} Grice reported Mother failed to successfully complete parenting classes and was inconsistent with mental health treatment. T. 24, 26-27. Rather, Mother's mental health deteriorated during the pendency of the case. Mother was chronically dishonest and manipulative. She filed a false affidavit with the trial court to support her self-filed motion to change legal custody. The affidavit included an email which purported to be written to Mother from Grice, but which Grice did not write. When compared to Mother's prior emails to Grice, it appeared the email was written by Mother. T. 29-34, SCJFS Exhibit 1.

{¶ 23} Grice further testified Mother's visitation with M.S.M. was not productive. Mother failed to take direction from staff and spent a significant portion of her visitation arguing with staff and inspecting M.S.M. for injuries. T. 28

{¶ 24} In January of 2023 Mother told Grice she was pregnant. Grice testified this was concerning due to Mother's history of falsely claiming to be pregnant. Mother told Grice she did not have a due date because her blood test was not showing she was pregnant but allegedly an ultra sound confirmed she was. T. 35-36. On February 8, 2023, Mother appeared for a visit with M.S.M. appearing to be at near full-term pregnancy when one week prior she had not appeared pregnant at all. Grice testified Mother's stomach appeared to be fake. T. 36-37. In early March, 2023, Mother claimed she gave birth at home. Grice alerted Coshocton County Children's Services because Mother was residing in Coshocton County at the time. T. 38-39.

{¶ 25} Canton Police Detective Kevin Sedares testified as to what followed Grice's contact with Coshocton County authorities. On March 17, 2023 Mother was arrested for abducting a newborn by posing as a Coshocton County Children's Services worker. He stated a vehicle involved in the incident was identified, located, and a traffic stop was conducted. Mother, her boyfriend, and the abducted child were in the car. At Mother's apartment, Sedares recovered a prosthetic stomach. Mother still claimed the child was hers. T. 97-101. As of the date of the hearing, Mother was charged with multiple felonies in connection with the abduction and was being held in jail pending trial. T. 101. In its brief filed with this court, SCJFS has included in its appendix Exhibit 17 which is a Stark County Court of Common Pleas judgment entry dated August 9, 2023. The entry reflects Mother entered pleas of guilty to burglary, a felony of the second degree, abduction, a felony of the third degree, forgery, a felony of the fifth degree, interference with custody, a misdemeanor of the first degree, and personating an officer, a misdemeanor of the first degree. The entry further reflects mother was sentenced to an indefinite term of incarceration of 7 to 10.5 years.

{¶ 26} Summit Psychological Associates psychology assistant Michael Stranathan testified he conducted Mother's psychological evaluation. Stranathan obtained records from SCJFS before conducting his evaluation. The records outlined Mother's prior involvement with child protective services in Ohio, Colorado, and Montana. T. 64-65. Mother denied any prior involvement with children's services agencies, claiming she had "severe retrograde amnesia" due to traumatic brain injury following an accident and had no recollection of anything that happened in her life prior to 2020. T. 66. Later, however, Mother admitted to permanently losing custody of other children prior to 2020. T. 66-67

Mother was further unable to produce any evidence she had been involved in an accident. Instead, she claimed she was in the witness protection program and that all her records were automatically destroyed upon her placement into the program. T. 68-69. Then, in between appointments, Mother claimed she had suffered another traumatic brain injury and her memories had been restored. T. 70.

{¶ 27} Stranathan performed testing on Mother and diagnosed her with borderline personability disorder, narcissistic personality disorder, and Munchausen Syndrome. He testified he noticed similar diagnoses in Mother's history, and that these diagnoses negatively impact Mother's ability to parent a child. T. 71-73. Stranathan additionally stated Mother exhibits manipulative, deceptive, and attention-seeking behavior. She attempted to manipulate the evaluation by providing false information and refusing to sign releases. This was also historically consistent behavior for Mother. T. 73-74. Stranathan did not believe Mother could successfully complete her case plan due to these non-adaptive personality traits, and was further concerned Mother would attempt to abscond with M.S.M. T. 75-76.

{¶ 28} Goodwill Industries Parenting Program supervisor Jennifer Fire also testified. She stated Mother was in her class and like Stranathan, Fire also noted Mother provided contradictory information. T. 81. Mother missed six classes. When she was in class her participation was distracting and off topic. T. 84. Fire felt Mother's visits with M.S.M. were concerning as she did not accept redirection offered during her visits. T. 85. Fire recommended Mother be prohibited from bringing food to visits for M.S.M. out of fear that Mother would attempt to harm M.S.M. with tainted food. In her 15 years with the same agency, Fire had never before had such concerns or made a similar recommendation. T.

89. Fire also felt and that Mother's home was not safe for the child, that Mother could not keep M.S.M. safe, and did not recommend Mother be reunited with M.S.M. T. 86, 90.

{¶ 29} During the best interest phase of the hearing, Grice testified M.S.M. has been in the same foster home since her removal from Mother's custody. She reported M.S.M. is bonded with her foster parents and has no behavioral, medical, or developmental issues. M.S.M.'s foster family was interested in adopting M.S.M. T. 135-137. Grice testified kinship placements had been explored but yielded no appropriate relatives to care for M.S.M. T. 138. She believed permanent custody was in M.S.M's best interest and an extension of temporary custody was not. T. 139-140. The guardian ad litem echoed Grice's recommendation. T. 152.

{¶ 30} Based upon the testimony presented, we do not find the trial court erred or lost its way in terminating Mother's parental rights and granting permanent custody of M.S.M to SCDJF, as SCJFS produced clear and convincing evidence to support the trial court's findings. We further find no error in the trial court's denial of Mother's motion for an extension of time. Finally, we do not find any manifest miscarriage of justice.

{¶ 31} Mother's assignments of error are overruled.

{¶ 32} The judgment of the Court of Common Pleas of Stark County, Ohio, Family Court Division, is hereby affirmed.


By King, J.,

Delaney, P.J. and

Baldwin, J. concur.